**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-00050-REB

ALBERTA S. MARTINEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed January 8, 2015, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of fibromyalgia, cervical and thoracolumnbar spondylosis, bilateral knee arthrosis, and depression. After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on July 17, 2013. At the time of this hearing, plaintiff was 51 years old. She has a high school education and past

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

relevant work experience as general grocery store clerk.  She has not engaged in substantial gainful activity since March 16, 2012, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the evidence established that plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations.[2]  The ALJ found plaintiff had the residual functional capacity to perform a reduced range of seated light work involving detailed but non-complex instructions.  Although this conclusion precluded plaintiff's past relevant work, the ALJ found that there were other jobs existing in substantial numbers in the national and local economies she could perform.  He therefore found her not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of

---

[2] Other alleged impairments were found to be non-severe, a finding which plaintiff does not challenge in this appeal.

a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294

n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff maintains the ALJ committed reversible error in (1) failing to apply the appropriate rule of decision under the Medical Vocational Guidelines; (2) weighing

improperly the opinion of plaintiff's treating physician; (3) failing to adequately develop the record as to plaintiff's impairment of fibromyalgia; and (4) discrediting plaintiff's subjective complaints of pain and functional limitation. Finding no reversible error in any of these particulars, however, I affirm.

Plaintiff first claims that the ALJ relied on the wrong rule under the Commissioner's Medical Vocational Guidelines – commonly known as the Grids – at step five of the sequential evaluation.[3] This argument is essentially a non-starter because the ALJ did not rely on the Grids in making his step-five determination. Instead, and because plaintiff did not have the residual functional capacity for a full range of light work, the ALJ appropriately used the Grids only as a framework for decisionmaking. *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993); *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). To determine whether there were jobs existing in significant numbers in the national and local economies that plaintiff could perform despite her limitations, the ALJ solicited – and ultimately relied on – the testimony of a

---

[3] One of the ways in which the Commissioner may meet her burden of proof at this final step of the sequential evaluation is by reference to the Grids. The Grids provide a type of short-hand for disability determinations,

> . . . establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform.

*Heckler v. Campbell*, 461 U.S. 458, 461-62, 103 S.Ct. 1952, 1954-55, 76 L.Ed.2d 66 (1983) (footnotes omitted).

vocational expert.  (Tr. 28, 49-51.)  Because the Grids specifically are intended to "relieve the [Commissioner] of the need to rely on vocational experts," *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983) (footnote omitted), any reference to the Grids was merely superfluous, *see Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992); *McKenna v. Astrue*, 2010 WL 148284 at *3 (D. Colo. Jan. 11, 2010).  There was thus no consequence to any mis-citation to the Grid rules.  *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir.1988); *Zagorianakos v. Colvin*, 81 F.Supp.3d 1036, 1044 (D. Colo. 2015).

Plaintiff next claims the ALJ failed to offer adequate reasons for the weight he afforded the opinion of her treating source, Dr. Robert Kawasaki.  The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  *Watkins*, 350 F.3d at 1301.  Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Plaintiff was referred in March 2012, just prior to her alleged date of onset, to Dr. Kawasaki by her primary care physician for evaluation of chronic pain.  At that point, plaintiff was still working and reported that she was required to lift up to 60 pounds for her job.  Nevertheless, she stated she was "gradually having increased pain and feels

that her capacity to keep on going in this job is becoming quite limited." Plaintiff reported multiple areas of pain in her neck, thoracic region, and low back, which injections and physical therapy had not helped, as well as "achiness" in both knees. She rated her pain as a 7 to 8 out of 10. (Tr. 285-286.) Plaintiff initially represented that a course of epidural steroid injections helped relieve her pain by 60 to 70% (Tr. 310-311), but later told Dr. Kawasaki that they "actually made her feel a bit worse" (Tr. 324), and Dr. Kawasaki did not recommend further procedures. Plaintiff thereafter saw Dr. Kawasaki at regular intervals, and he managed her pain medications. (Tr. 315-325.)

In May 2013, Dr. Kawasaki completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" (Tr. 353-357) in which he suggested, *inter alia*, that plaintiff could sit no more than 30 minutes at a time for up to four hours a day, stand for 15 minutes at a time for up to two hours a day, and walk for 30 minutes at a time for two hours a day, with the need to lay down in between (Tr. 354). He stated that plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally (Tr. 353), and imposed significant postural and environmental restrictions as well (Tr. 355-356). The ALJ concluded that Dr. Kawasaki's opinion was entitled to "some weight," but that the medical evidence of record (including MRIs and X-rays) did not support his suggested restrictions on plaintiff's abilities to sit, stand, or walk, nor his suggestion that plaintiff could not work around cold or heat. (Tr. 27.)

Although plaintiff characterizes the ALJ's opinion as conclusory, it most assuredly is not. The consistency *vel non* of a treating source's opinion with the medical record is an appropriate consideration in the determination of how much weight that opinion should be given, as is whether the opinion is supported by medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(c)(3) & (4). Earlier in the opinion, in connection

7

with his analysis of the credibility of plaintiff's subjective complaints, the ALJ thoroughly recounted the medical evidence of record. Reviewing Dr. Kawasaki's report of his initial examination of plaintiff (Tr. 285-288), the ALJ noted that despite "diffuse tenderness to palpation" along her spine, plaintiff had "mild pain behaviors" and was able to "move[] around the room quite fluently," with normal gait pattern and full strength through her lower extremities. She also had full strength and range of motion through her upper extremities, with no signs of impingement in the shoulders. Moreover, despite plaintiff's claims of significant pain, Dr. Kawasaki course of treatment involved merely adjusting her medications and recommending chiropractic and acupuncture treatments and an exercise program. (Tr. 25, 287-288.)

The ALJ may not be faulted for characterizing the medical findings of plaintiff's impairments as "minimal" and her course of treatment as "conservative." His discussion of the medical evidence after the date of this initial evaluation was similarly thorough and accurate. Here again, despite plaintiff's claims of continued significant pain, the medical evidence revealed minimal objective findings and conservative treatment. (Tr. 25-27.) The evidence also included the opinion of the consultative examiner, who suggested, based on a "normal exam," that "there is no limit to the amount of time [plaintiff] can sit, stand or walk during a normal 8-hour work day" and "no recommendation for increased frequency of breaks," much less the need to lie down at any point in the day. (Tr. 308.)

The ALJ's analysis of this evidence earlier in his opinion adequately substantiates his subsequent conclusion that Dr. Kawasaki's assessment of plaintiff's functional capacity was not consistent with the medical evidence. There is no need for him to replow this same ground yet again when "[t]he court is able to meaningfully

review the ALJ's opinion without such redundancy[.]" **McKee v. Colvin**, – F.Supp.3d –, 2016 WL 2016 WL 1222972 at *3 (D. Colo. March 29, 2016). **See also Best-Willie v. Colvin**, 514 Fed. Appx. 728, 733 (10th Cir. March 26, 2013) ("Although there was not a contemporaneous discussion of this evidence in discounting [the medical source's] opinion, in reading the ALJ's decision as a whole, it is evident [the medical source's] opinion is inconsistent with the record."); **Endriss v. Astrue**, 506 Fed. Appx. 772, 777 (10th Cir. Dec. 26, 2012) (ALJ "is not required to continue to recite the same evidence again" if already discussed earlier).

I thus find no reversible error in the ALJ's decision to afford Dr. Kawasaki's opinion less than controlling weight and to decline to adopt many of the extreme limitations suggested therein.[4] **See Rex v. Colvin**, 26 F.Supp.3d 1058, 1063 (D. Colo. 2014) (ALJ not obligated to include every limitation possibly suggested by a medical source). Under these circumstances, although the ALJ perhaps could have made the basis of his opinion in this regard slightly clearer, any failure to do so plainly was harmless and does not warrant remand. **Bernal**, 851 F.2d at 303; **Zagorianakos**, 81 F.Supp.3d at 1044.

Relatedly, plaintiff suggests it was error to rely on the opinion of the consultative examiner, Dr. Elizabeth McCraven, because she did not have access to longitudinal

---

[4] Plaintiff points out that contrary to the ALJ's characterization, Dr. Kawasaki did not state that plaintiff could not work in conditions of extreme heat or cold at all (Tr. 27), but only that she could do so no more than occasionally (Tr. 357). However, plaintiff points to no evidence contradicting the ALJ's conclusion that there was no medical support for any such restriction – of whatever level. Similarly, despite the ALJ's failure to articulate why he did not adopt Dr. Kawasaki's opinion that plaintiff was limited to only occasional reaching and handling, plaintiff again cites nothing in the record suggesting that such restrictions were in fact warranted. Therefore, and although the ALJ generally must explain his rationale for declining to adopt limitations suggested by a medical source, **see Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996), any error to do so in these respects can only be seen as harmless, **Bernal**, 851 F.2d at 303.

information regarding plaintiff's fibromyalgia.  *See* **Social Security Ruling** 12-2p, 2012 WL 3104869 at *5 (SSA July 25, 2012) ("Because the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the [consultative examination] has access to longitudinal information about the person.").  This argument is without merit.  For one thing, it simply is not accurate to suggest that Dr. McCraven had no such information.  She took a lengthy medical history, documenting plaintiff's diagnoses, subjective complaints, and reports of daily activities, and nothing in the record suggests she did not credit fully these reports.  In addition, Dr. McCraven reviewed medical records from Dr. Kawasaki's office, a 2011 MRI of plaintiff's cervical spine, and X-rays of her lumbar spine.  (Tr. 303-304, 308.)  Plaintiff points to no specific evidence that should have been considered but was not, much less posit how additional longitudinal records might have changed Dr. McCraven's opinion.[5]

Moreover, contrary to plaintiff's tacit suggestion, Social Security Ruling 12-2p establishes no absolute rule which would render a consultative examiner's opinion necessarily infirm where longitudinal evidence is not provided.  Instead, the ruling acknowledges that the Commissioner "may rely on the [consultative examiner's] report even if the person who conducts the [consultative exam] did not have access to longitudinal evidence if we determine that the [consultative examination] is the most probative evidence in the case record."  **Social Security Ruling** 12-2p, 2012 WL 3104869 at *5.  It is evident that such was the case here, as the ALJ afforded Dr.

---

[5] I note in this regard that plaintiff was diagnosed with fibromyalgia in 1995, yet nevertheless continued to work at a job requiring heavy physical exertion for some 17 years thereafter.  *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008).  The ALJ specifically noted no evidence suggesting that her condition or symptoms had suddenly worsened as of the alleged date of onset.  (Tr. 24.)

10

McCraven's opinion "great weight." (Tr. 27.) Dr. McCraven's opinion therefore was not infirm for failing to consider such evidence, nor, concomitantly, was the ALJ's decision infirm for relying on Dr. McCraven's opinion.

Finally, plaintiff faults the ALJ for failing to fully credit her subjective complaints of pain and functional limitation. In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Such deference is warranted on this record. As noted above, the ALJ reviewed the medical and other evidence in detail, but found that it did not support limitations to the extent plaintiff alleged.[6] That determination is adequately supported by the record and thus supports the ALJ's credibility assessment. Although plaintiff points to some evidence in the record which could be construed to substantiate her subjective complaints, such conflicts in the evidence are for the ALJ to resolve. *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988); *Wade v. Colvin*, 26 F.Supp.3d 1073, 1082 (D. Colo. 2014).[7] It is apparent that the ALJ fulfilled that obligation in this case. This

---

[6] The ALJ accounted for plaintiff's moderate difficulties in concentration, persistence, and pace by limiting plaintiff to work requiring no more than detailed but non-complex instructions (Tr. 23), which is the limitation he included int the hypothetical he posed to the vocational expert at the hearing (Tr. 49). Although plaintiff points out that elsewhere in the narrative portion of his opinion, the ALJ stated that plaintiff was limited to "*non-detailed, complex* instructions" (Tr. 26 (emphasis added)), it is obvious from the opinion as a whole that this reference was merely a "typographical error, rather than a fatal ambiguity in the decision." *Ramsey v. Barnhart*, 117 Fed. Appx. 638, 641 (10th Cir. Sept. 21, 2004).

[7] Nevertheless, much of this evidence consists of plaintiff's own reports of pain and limitation. Plaintiff's reliance on this evidence as bolstering her credibility is therefore circular.

court is not empowered to reweigh the evidence in the manner plaintiff here requests. *See Thompson*, 987 F.2d at 1487; *Zagorianakos*, 81 F.Supp.3d at 1045.

## IV. CONCLUSION

Although plaintiff plainly suffers from pain and other deleterious effects of her impairments, "disability requires more than mere inability to work without pain." *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) (citation and internal quotation marks omitted).  *See also Qantu v. Barnhart*, 72 Fed. Appx. 807, 811 (10th Cir. 2003) ("We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled.").  The record before me supports the ALJ's determination that plaintiff had the residual functional capacity for some level of work, despite her pain. Thus, and for the reasons set forth herein, I find and conclude that there was no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

## V.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated March 30, 2016, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge